**This order is SIGNED.**

**Dated: June 18, 2015**

_/s/ J T Marker_
**JOEL T. MARKER**
**U.S. Bankruptcy Judge**



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>CASTLE ARCH REAL ESTATE INVESTMENT COMPANY, LLC,<br><br>                                    Debtor. | Bankruptcy Case No. 11-35082<br><br>Chapter 11 |
| D. RAY STRONG, as Chapter 11 Trustee for Castle Arch Real Estate Investment Company, LLC,<br><br>                                    Plaintiff,<br><br>v.<br><br>PRINCE, YEATES & GELDZAHLER, PC, a Utah professional corporation; ADAM S. AFFLECK, an individual; and DOE INDIVIDUALS I-V,<br><br>                                    Defendants. | Adversary Proceeding No. 15-2007<br><br>Judge Joel T. Marker |

**MEMORANDUM DECISION**

Every cause of action involves multiple elements that a plaintiff must satisfy in order to succeed, and it's easy to lose the forest for the trees in hotly contested litigation.  As liquidating trustee under a confirmed chapter 11 plan, the plaintiff here alleged legal malpractice on the part of the Debtor's former bankruptcy counsel in connection with an insurance policy that lapsed while the Debtor was still a debtor-in-possession.  After removing the action from state court and

1

then failing to get it dismissed on claim preclusion grounds, the defendants made one last early and unusual stab at summary judgment on the rather simple basis that the plaintiff was unable to show any damages resulting from counsel's alleged malpractice. Equally unusual was the plaintiff's failure, in this Court's view, to counter the defendants' motion with anything sufficient to show even one dollar of possible damages. Accordingly, the Court issues this brief Memorandum Decision to explain why this adversary proceeding will be dismissed.[1]

## I. FACTS[2]

In October 2011, a state court receiver for Castle Arch Real Estate Investment Company, LLC (CAREIC) filed voluntary chapter 11 petitions for CAREIC and six of its subsidiaries. Prince, Yeates & Geldzahler, PC was employed as counsel for CAREIC, with Adam S. Affleck as lead attorney, while each of the subsidiaries retained its own separate counsel.[3] On the petition date, CAREIC and others were insured for up to $5 million by AXIS Surplus Insurance Company (AXIS) under a wasting, claims-made Private Equity and Venture Capital Fund Liability Policy (the Policy), which provided coverage for defense costs and other defined Losses in connection with Claims arising from certain Wrongful Acts.[4] The Policy lapsed on January 20, 2012, and CAREIC did not renew the Policy, report any actual or potential Claims to AXIS during the reporting period, or purchase an extension of the reporting period. But certain

---

[1] Although not required by Federal Rule of Civil Procedure 52(a)(3), this Memorandum Decision constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. Any of the findings of fact herein are deemed to be conclusions of law, to the extent appropriate, and similarly, any conclusions of law herein are deemed to be findings of fact, and they shall be equally binding as both.

[2] All of the following undisputed facts are taken, either directly or in summary, from the Motion for Summary Judgment Re: Damages and Supporting Memorandum (docket #20) (Motion) and the Opposition to Defendants' Motion for Summary Judgment (Damages) (docket #28) (Opposition).

[3] Collectively, the Court will refer to Prince, Yeates & Geldzahler, PC and Adam S. Affleck as Prince Yeates.

[4] The definitions of Claim, Loss, Wrongful Act, and other terms are contained in § III. of the Policy.

2

directors and officers (D&Os) of CAREIC used their own funds to purchase a one-year, $1 million extension of the reporting period as to themselves. It is Prince Yeates' role in these actions (or failures to act) that form the backbone of the malpractice allegations by plaintiff D. Ray Strong (Strong).

On April 26, 2012, CAREIC stipulated to the appointment of a chapter 11 trustee, and Strong was appointed as CAREIC's trustee on May 3. Strong was not appointed as trustee in any of the subsidiaries' cases, but rather assumed management of those entities as debtor-in-possession. Several of CAREIC's subsidiaries (and one non-debtor subsidiary) were later substantively consolidated into CAREIC, but not Castle Arch Opportunity Partners I, LLC (CAOP I) or Castle Arch Opportunity Partners II, LLC (CAOP II), which Strong continued to manage as debtor-in-possession until the June 7, 2013 confirmation of his First Amended Plan of Liquidation Dated February 25, 2013 as Modified (the Plan). At that point, Strong became the Liquidating Trustee of three trusts—the Legacy Trust (consisting of the substantively consolidated CAREIC estate); the CAOP I Trust; and the CAOP II Trust (collectively, the Trusts). It's in his capacity as Liquidating Trustee of the Legacy Trust that Strong has sued Prince Yeates in this action for legal malpractice.[5] And it's in his capacity as Liquidating Trustee for all three of the Trusts that Strong has sued CAREIC's former management for "tens of millions of dollars" in the U.S. District Court for the District of Utah in an action styled as *Strong v. Cochran et al.*, Case No. 2:14-cv-788-TC-EJF. Strong also reported various actual or potential Claims to AXIS within the D&Os' extended reporting period, and he has moved to intervene in an action by AXIS to interplead the balance of the $1 million D&O policy proceeds.

---

[5] Strong's Amended Complaint contains three causes of action, which cover all three species of legal malpractice recognized by Utah law—breach of fiduciary duty (standard of conduct); professional negligence (standard of care); and breach of contract. *See, e.g.*, *Christensen & Jensen, P.C. v. Barrett & Daines*, 194 P.3d 931, 937-38 (Utah 2008); *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1290 (Utah Ct. App. 1996).

Prince Yeates' Motion incorporates Addenda A, B, and C into Undisputed Fact #24. These Addenda contain both factual assertions and legal argument regarding the two undisputed claims listed in CAREIC's Schedules (Addendum A); all claims filed in the CAREIC case (Addendum B); and intercompany claims (Addendum C). In his Opposition, Strong vaguely objected to the Motion's "characterization of [the substance of the Addenda] to the extent it is inconsistent with what they actually reflect." At oral argument, the Court asked Strong to clarify any mischaracterizations, and he responded only that the Addenda did not include a list or analysis of any investor interests, which were also preserved, assigned, and in line for possible payment under Article V of the Plan.[6] Indeed, it is these investor interests—which are part of a larger group of actual or potential Claims that Strong defines as Additional Pleaded Policy Claims—along with a large intercompany obligation owed by the Legacy Trust to the CAOP I Trust, that form the heart of Strong's argument that CAREIC may suffer damages as a result of Prince Yeates' conduct. And since Strong effectively conceded that CAREIC has not paid any actual defense costs or liability to date that would have been covered by the Policy, any alleged damages would necessarily have to arise from future amounts that CAREIC (or more precisely, the Legacy Trust) may yet have to pay.

## II. DISCUSSION

The standards for reviewing a motion for summary judgment are well known. Under Federal Rule of Civil Procedure 56(a), the Court is required to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Substantive law determines which facts

---

[6] In the Opposition's final sentence of footnote 6, Strong also suggests that he at least "should be given a brief opportunity to respond to [the 10 purported 'facts' in Addendum C] as best he can." But he never filed anything further in the six weeks before the hearing, he did not raise the issue at oral argument, he already provided substantive responses in the Opposition itself, and those facts are immaterial to the Court's analysis.

4

are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[7] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."[8] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[9]

The moving party bears the burden to show that it is entitled to summary judgment,[10] including the burden to properly support its summary judgment motion as required by Rule 56(c) and Local Rule 7056-1.[11] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[12] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."[13] When considering a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party.[14]

Several of the parties' arguments can be dispatched in short order. First, for purposes of the Motion, the Court assumes that both the Policy and its proceeds were property of CAREIC's estate to the extent that CAREIC was covered by the Policy in addition to the D&Os. Second, for purposes of the Motion, the Court assumes that the Trustee's interpretation of Policy § V.E. is correct—*i.e.*, that the Policy's Priority of Payments provision "applies to actual paid amounts, not potential future amounts." As such, the Court will assume that some of the $5 million in

---

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[8] *Id.*
[9] *Id.* at 249.
[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[11] *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).
[12] *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).
[13] *Celotex*, 477 U.S. at 324.
[14] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988).

5

Policy proceeds may have been available to pay defense costs or liability against CAREIC despite some of the $1 million D&O policy extension already being depleted and despite the nature and amount of the claims raised against the D&Os in *Strong v. Cochran et al.*, 2:14-cv-788-TC-EJF. Third, by failure to respond to Prince Yeates' relevant facts or argument either in the briefing or at oral argument, Strong has effectively conceded that CAREIC has paid no actual Policy-covered defense costs or liability to date. As such, any alleged damages must necessarily be in the nature of possible future damages that CAREIC (or more precisely, the Legacy Trust) may yet have to pay. And finally, the Court acknowledges that "reasonable approximations, estimates, and averages" can be sufficient to prove damages, particularly in legal malpractice actions—but the number still has to be greater than zero.[15]

Which brings us to the heart of the matter—whether there was an otherwise covered Loss that the Legacy Trust might someday have to pay, because the Policy only pays Losses, not Claims. In this regard, Strong essentially ignored both Prince Yeates' factual averments and legal analysis of CAREIC's scheduled claims, filed claims, and intercompany claims in Addenda A, B, and C. As such, Strong has conceded those facts, and the Court accepts Prince Yeates' legal analysis as applied to those facts as to why they do not qualify as potential Policy-covered Losses. Rather, Strong defined and then pointed to Additional Pleaded Policy Claims as the

---

[15] At times, Strong also tries to define away his obligation on summary judgment by stating that Prince Yeates has not specifically challenged the element of proximate cause, with two alleged consequences— that some degree of "financial harm" to CAREIC is thus presumed, and that "Prince Yeates's lawyering errors fundamentally changed [Strong's] decisional calculus in pursuing" and settling claims against the D&Os. Opposition pp. iii-iv. But the first position is too myopic, since the clear import of the Motion is to challenge the assertion that any relevant financial harm to CAREIC occurred. And the second position, as supported by the Declaration of D. Ray Strong (docket #29), is both speculative and irrelevant. Strong has no personal knowledge of what the D&Os might have done under different circumstances, and the relevant party here is CAREIC, not the D&Os. Strong's willingness to settle claims against the D&Os has nothing to do with whether the Legacy Trust will be on the hook for any Losses that would have been covered by the Policy.

source of possible damages to CAREIC.[16] Although the non-exclusive definition of Additional Pleaded Policy Claims differs depending on where one looks, they all include things that have long since passed and which never have—and never will—cause any Policy-covered financial harm to CAREIC (or in some cases, any financial harm at all). These include such items as the July 2011 motion to appoint a receiver, the February 2012 motion to appoint a chapter 11 trustee, and the filed and scheduled claims against CAREIC. Strong also did not explain in the Opposition or at oral argument why items such as these would be a possible source of damages to CAREIC.

After the Court pressed Strong several times at oral argument to provide even a hint of specificity regarding possible damages, he ultimately came up with just two items: (1) the CAOP I Trust's claim for over $5 million against the Legacy Trust, and (2) "the aggregate amount of investor interests scheduled in CAREIC's Schedules as dealt with in the specific provisions of the Plan."[17] Taking the second item first, one of Strong's iterations of the Additional Pleaded Policy Claims definition includes "notices of equity interest to the extent they assert a right of recovery based on CAREIC's mismanagement, breach of fiduciary duty, or other conduct constituting a 'Wrongful Act' under Section III. X of its Policy."[18] But again, Strong failed to provide even a single reference to any specific interest to which his broad assertions might apply, and it is not this Court's responsibility to scour the dockets in search of such an interest that might save Strong from summary judgment. To be clear, the Court fully understands that the confirmed Plan provides for the preservation, assignment, and pursuit of CAREIC investors'

---

[16] *See, e.g.*, Opposition pp. ii, xvi, and xxvii-xxviii, and Amended Complaint ¶ 18.
[17] 6/3/15 Hearing Recording at 4:03:27 p.m. Strong made some passing references to D&O indemnity in his Opposition, which Prince Yeates turned into a full-blown argument in § II.C. of its Reply in Support of Defendants' Motion for Summary Judgment Re: Damages (docket #41). At oral argument, Strong made no mention of any D&O indemnity claims as a possible additional source of damages to CAREIC, and he did not request any additional time to develop the issue.
[18] Opposition p. xvi.

7

interests and related claims to Strong with the hoped-for goal of being able to return something to those investors. But in the context of this Motion, Strong was required to provide more than sweeping, unsupported generalizations if he expected to make it to trial.

As for the CAOP I Trust's claim, it was the result of a complex settlement between the Legacy Trust and the CAOP I Trust that this Court approved on December 4, 2014 in resolution of certain prepetition intercompany claims between CAOP I and CAREIC.[19] Prince Yeates argued that Losses on intercompany Claims between CAOP I and CAREIC are barred under the insured-vs.-insured exclusion in § IV.A.5. of the Policy, and Strong conceded that CAOP I qualified as a Policyholder (and thus as an additional Insured) under §§ III.F. and III.Q. But Strong countered that an exception to the exclusion exists in Policy Endorsement No. 7 § II., which restores coverage for Losses on Claims "brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator, rehabilitator or creditors' committee of a Policyholder, or any assignee thereof." Having conceded that he managed CAOP I as a debtor-in-possession rather than a trustee through confirmation of the Plan (and with debtors-in-possession specifically included as Policyholders and thus Insureds under §§ III.F. and III.Q.), Strong argued that his post-confirmation role as Liquidating Trustee of the CAOP I Trust qualified him as a "liquidator" under the exception to the coverage exclusion.

This is Strong's best argument, but the Court still finds it lacking even though the issue goes more toward other elements of legal malpractice actions rather than damages as such.[20] As Strong noted on page xxix of the Opposition, the January 2012 joint administration motion filed by Prince Yeates stated that "there are intercompany obligations between CAREIC and each of

---

[19] *See* docket #s 1034 and 1042 in main case #11-35082.
[20] There are also questions about the timing of the CAOP I Trust's claim and whether CAREIC's underlying actions would have constituted a Wrongful Act under the Policy, which the Court does not address.

8

the CAREIC Affiliates" and that "there may exist intercompany transfers between CAREIC and the CAREIC Affiliates that are subject to a trustee's avoiding powers under 11 U.S.C. §§ 544, 547, and/or 548." In its contemporaneous time records for billing purposes, Prince Yeates even referred to these "obligations" and "transfers" as "claims."

But Prince Yeates cannot be retrospectively saddled with a duty to inform AXIS of potential Claims that were patently uninsurable during the time that Prince Yeates served as counsel for CAREIC, and there is no applicable express contractual promise in the two-page letter Retention Agreement attached as Exhibit C to the Amended Complaint. Indeed, even if CAREIC had either renewed the Policy or purchased an extension of the reporting period as Strong believes that Prince Yeates should have advised—and what *should have* happened is the central inquiry in all legal malpractice actions[21]—it would have been equally fruitless for Strong to report such potential Claims to AXIS after he took over management of CAOP I as a debtor-in-possession. It was only the eventual vagaries of Strong's own confirmed Plan that gave Strong a possible foothold as a covered "liquidator." So although the CAOP I issue is best viewed through the lens of Prince Yeates' duty to CAREIC, any breach of that duty (or an express contractual promise and any breach of that promise), and/or proximate cause rather than damages *per se*, it still leads to the same result—that Strong is unable as a matter of law to hold Prince Yeates liable for the absence of insurance coverage for the CAOP I Trust's recently settled claim against the Legacy Trust.[22]

---

[21] *Kranendonk v. Gregory & Swapp, PLLC*, 320 P.3d 689, 696 (Utah Ct. App. 2014) (quoting *Harline v. Barker*, 912 P.2d 433, 440 (Utah 1996)).

[22] The point of a motion for summary judgment is to determine whether there is a genuine issue for trial. Regarding the creation, nature, and amount of the CAOP I Trust's claim against the Legacy Trust, the relevant facts have already been stated by the parties, and the Court can see no circumstance in which further legal briefing would matter. As such, there is no justification to allow Strong to start the process of heading to trial when there is no genuine issue to resolve, even if the issue does not go directly (or at least solely) toward the issue of damages.

### III. CONCLUSION

The Policy was never a $5 million cashier's check payable to CAREIC, and damages are a critical element of all three of Strong's causes of action. And even with the leeway regarding the ultimate calculation of damages in legal malpractice actions and the summary judgment posture of the issue, it is simply not enough for Strong to make vague assertions and then request that the matter be resolved at trial. The whole purpose of a motion for summary judgment is to determine whether a trial is even necessary. The time was now for Strong to present even the possibility of a dollar of damages to CAREIC for which Prince Yeates could be held liable as a result of its conduct. Having failed to do so for the reasons stated above, this adversary proceeding will be DISMISSED WITH PREJUDICE. Per Federal Rule of Civil Procedure 58(a), as incorporated by Federal Rule of Bankruptcy Procedure 7058, Prince Yeates is directed to prepare both an order granting the Motion and a separate judgment dismissing the adversary proceeding in accordance with this Memorandum Decision.

-------------------------------------------END OF DOCUMENT-------------------------------------------

_____ooo0ooo_____
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

John T. Anderson
Anderson & Karrenberg
50 West Broadway, Suite 700
Salt Lake City, UT  84101-2006
    *Counsel for Plaintiff*

Andrew M. Morse
Snow Christensen & Martineau
10 Exchange Place, 11th Floor
Salt Lake City, UT  84111
    *Counsel for Defendant*